Alrighty, now we'll hear our first case, Zodiac Pool Systems v. Department of Energy, number 23-3094. And are you going to be reserving time, Counsel? Yes, Your Honor, I'd like to reserve three minutes for rebuttal. That'll be granted, and you may proceed. Thank you. Good morning, Your Honors. May it please the Court? Keith Coyle, appearing on behalf of the petitioner, Zodiac Pool Systems LLC. Joining me at Counsel's table is Stephanie McKaylo of Babs Calland. Lots of American consumers buy pressure cleaner booster pumps. These pumps, which are basically self-propelled vacuum cleaners for swimming pools, cost about $500. The Department of Energy wants to increase that cost by more than $350, or about 70% of the purchase price. Why? Because the Department decided in the final rule under review that pressure cleaner booster pumps need to have variable speed motors, even though these pumps are specifically designed for single speed operation. But Congress did not authorize the Department to make that decision in the first place. And even if it did, the variable speed control mandate for pressure cleaner booster pumps would still be unlawful. Why don't we get right to issue preservation? Sure. You know, we all read the briefs, and your briefs are excellent, but how do we get around the fact that you didn't at least arguably preserve this issue during rulemaking, and in fact went the other way and supported a rule? So we think Zodiac did not forfeit the statutory authority argument for three reasons. First, because the Department addressed the issue on its own throughout the rulemaking process. Second, because the issue is a pure question of law. And third, because the Department reversed its position on the issue in the final rule. And we cited in our brief a series of cases from other appellate courts involving cases where agencies had preserved issues by considering them sua sponte in the rulemaking process under review. Well, I mean, how do you square away just then Judge Alito's opinion in Southwestern Pennsylvania Growth Alliance? I mean, there it said that something to the, I can quote it, but the petitioner may not raise an argument on appeal because this, the substantive argument because this argument was not raised during the rulemaking process, and generally federal appellate courts don't consider issues that had not been passed on by the agency whose action is being reviewed. I mean, you took the opposite position before the agency. How can we consider that now? So I think it's important to emphasize that under the Clean Air Act, the case that was being considered there, there is a statutory issue exhaustion requirement that requires parties before the EPA imposes a statutory obligation to raise issues. To the extent that there is an issue exhaustion requirement here, it's prudential in nature. I also want to emphasize that a lot of the prudential exhaustion cases that the Department cites in its brief rely on Chevron-based principles, where prior to the Supreme Court's recent decision in Loperbright, agencies were empowered to pass on the meaning of their statutes in the first instance, and they were given deference. We no longer have Chevron deference. Well, what you're saying is technically true, but our preservation doctrine was well before Chevron, so I don't know whether our issue preservation jurisprudence is wiped out by Chevron. I think a lot of your issue preservation jurisprudence rises in the context of trial-like proceedings or adjudications, where we have the party presentation principle, where we expect that parties will raise issues before a neutral decision-maker so that those issues are preserved for review. This is a rulemaking principle. It has been applied in the rulemaking context. It has been applied in the rulemaking context. It's not a hard-and-fast rule. The Court has said that it reserves discretion to decide issues. We do think that in this case, another important thing to remember is the Department reversed its position on the source of its statutory authority in the final rule. To the extent that the parties to the joint petition had relied on prior representations by the Department that the Department made about its source of statutory authority, including in the August 2017 public meeting that started this rulemaking process, the Department maintained in the 2017 public meeting that Section 6313B provided statutory authority for the rulemaking. They continued to say that in the proposed rule. And then in the final rule, they reversed course. They said, you know what? We were wrong about that. This statute that's been in place for more than 30 years, we don't think it actually gives us authority to issue this rule. So procedurally, substantively, that issue was preserved. And the first opportunity that Zodiac has to challenge that new position is before this Court. There is no requirement before the Department of Energy to file a petition for reconsideration to exhaust an issue that was raised for the first time in the final rule. So we think the issue is preserved. Now, to the extent that the Court has concerns about the positions that the parties took or the Department took in the rulemaking process, I think that bears on the weight, the weight that you give to the merits of the arguments that you are hearing today. But I don't think it goes to forfeiture. I think the issue was preserved because the Department was considering it throughout the rulemaking process. The Department changed its position on a fundamental statutory question in the final rule. And this is the first opportunity that anybody involved in the process had to challenge that determination. Counsel, your argument then, they just simply cited the wrong source of authority? I mean, my argument is, look at the rulemaking record. The Department believed and told other parties that it had authority under Section 6313B to regulate the motors at issue in this case. In the final rule, they said we are wrong about that. Even though the statute had been in place for 30 years, and six years earlier, they told everybody that this was a source of authority. And look, I'm not here to tell the Department to not change its position on legal issues. Their job is to get this stuff right. But what I am saying is if an agency does change its legal position on an issue in a final rule, that legal issue is preserved for review. And this is the first opportunity that Zodiac has had to challenge that new position, which is the only statutory requirement that talks about energy conservation standards for electric motors. The Department says it doesn't apply. And the Department says our authority comes from four other places, definitions, a borrowing provision, and two procedural requirements. The one thing that's missing from that list of four things, authorization. They do not identify a provision in the statute that authorizes energy conservation standards for these motors. They are basically blurring distinctions between definitions and procedural requirements. But they have not told you, and we put this to them directly in the brief, where is the statute? And the statutes that they cited are a definition, a borrowing provision, and two procedural requirements. None of those provisions give them legal authority for this rule. So under your reading, does the Department of Energy have the power to regulate anything under 63111A? I think 63111A defines types of industrial equipment that are subject to Part A1 of the statute. It provides the list of things. Is there a general authority to regulate anything in that list? No. I think the authority to prescribe energy conservation standards, test procedures, labeling requirements, those things all come from the subsequent provisions in the statute. The definition provision just tells you what words mean for the remaining parts of these statutory provisions. If it's not designated and then there's no specific enumerated or elsewhere standard, why would it be included? I think even for purposes of electric motors, and even for purposes of the dedicated purpose motors that we are seeing are exempt from the statute, there are still things under the statute that we think the Department of Energy can do. They can prescribe test procedures. They can prescribe labeling requirements. They can request information. What they can't do is prescribe energy conservation standards, and that's consistent with the statutory history. When Congress passed the original version of Part A1 in 1978, there was no authorization to prescribe energy conservation standards for industrial equipment at all. When they amended the statute in 1992, they gave the department limited authority to prescribe energy conservation standards. They gave them a shorter leash, and that leash has always been shorter than the department's authority to prescribe energy conservation standards for consumer products. From the beginning of the statute, the department's authority was always broader over there, but on this side of the statute in Part A1, it was always narrower. It has always been narrower. And the one thing that the department has not identified for you is a provision that authorizes these rules. They've cited a definition that existed in 1978, the original version of this statute, when there was no authorization for energy conservation standards. Can you address 6295L1 as adopted and why it would not give authority? So 6295 is the authority for catch-all, for equipment that's designated by the department under this catch-all provision that sort of says we have a list of enumerated things that are going to be industrial equipment or consumer products. And then there's a catch-all provision that says the Department of Energy can add anything else to this list of consumer products or industrial equipment. First, the department has not invoked the catch-all provision as authority for this rule. Not in the rule under review and not in their brief. They basically say that provision is irrelevant. So 6295L, nothing to do with this case, at least in terms of the legal authority that the department has invoked here. And under the Chenery Doctrine, this court has to look at the decision under review based on the grounds that are invoked by the agency. And the agency hasn't invoked the catch-all and it hasn't invoked 6295L. The other thing that the agency has not pointed to is 6295A. That is the source of authority for prescribing energy conservation standards for consumer products. There was an earlier version of that general grant of authority in the original statute back in 75. It got adjusted in 78. But you will notice that on the list of borrowing provisions, 6295A is not borrowed for industrial equipment. There's a reason for that, because that is a general grant of rulemaking authority for energy conservation standards. So Congress made a decision to omit that borrowed provision from the list. Again, because the authority under Part A1 for industrial equipment has always been narrower when it comes to energy conservation standards. Again, the department, in their brief, has not identified a substantive grant of rulemaking authority. They've told you to look at a definition of borrowing provision that doesn't borrow any substantive rulemaking authority, and then to look at procedural requirements or things that apply when they are exercising the authority granted elsewhere in the Act. So they do not have the authority to promulgate energy conservation standards for these motors. I'll save my time for that. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Martin Totaro for the Department of Energy. The Department of Energy rule at issue here fixes a regulatory loophole identified by Zodiac itself. Since 2017, pool pumps have been subject to federal efficiency standards, but standalone pool pump motors have not. The problem is that the motors often die and need to be replaced, and so several industry members, including Zodiac, pointed out this discrepancy and called upon the agency to act. It's uncontested that this rule will bring wide benefits, and until the case reached this court, it was uncontested that the department has statutory authority in this space. Zodiac's newfound resistance to the department's statutory authority should be rejected for two independent reasons. First, forfeiture. This is a textbook case of forfeiture. It's not just that they didn't raise the issue during the rulemaking proceedings. It's that they invoked the same authority when they asked the department to promulgate a rule to fix the regulatory loophole. So that was in their petition for rulemaking. When you say they invoked the same authority, what do you mean the same authority? They pointed out that this is industrial equipment that is already a covered product. And so that was when they petitioned for— 6313 and your final rule invokes, does not expressly disavows 6313. So how would they have had an opportunity to consider 6295 at any point prior? So just to clarify here, there was no flip-flop on the agency's source of statutory authority, just to be crystal clear on this point. And so the agency in the proposed rule, the notice of proposed rulemaking, and the final rule said dedicated purpose pool motors fall within the scope of electric motors. And it also cited the same statutory provisions, 63111, 6316A, and 6295. And that was true in the proposal. That's at 87 FR 37123 and 37128. And also in the preamble in the final rule, 88 FR 66971. That's all that matters. The agency also had a discussion of 6313 in its general background discussion of EPCA, but it didn't rely on 6313 in the proposed rule or the final rule in promulgating the rule at issue here. And I'd also like to just point out that even if the agency did, which it did not, that's irrelevant on forfeiture. On forfeiture— Before we move on there, you all invoked rules section 6295P4 when you issued the 2017 pool pump rule. But they didn't do the same for the motor rule. So aren't they right there? I think it goes to a broader question of regardless of which provision the agency invoked, the question is, for forfeiture purposes, does the agency have statutory authority? And so if they thought that the Department of Energy was wrong in the sources it invoked, because it's not like, for example, if we had invoked those and then relied on them in the final rule, it wouldn't matter. They would still say we're lacking statutory authority. Your argument is they had plenty of opportunity to object and fail to. Plenty of opportunity, and we're not invoking estoppel or anything like that or come to the news, anything like that. But they are the ones who said that we had authority to regulate these types of motors. And I think on that point, the Southwest Pennsylvania Growth Alliance versus Browner is really on all fours here. It was a rulemaking question of whether the preserved or not preserved issue was an issue of statutory authority, whether the EPA exceeded its authority under the Clean Air Act. And there the court said, look, it's not preserved. It didn't focus on the particular provision in the Clean Air Act for statutory exhaustion. Instead, it relied on more general principles of forfeiture. And it said it's- I don't think forfeiture appears in this opinion. It just talks about preservation. The word forfeiture does not appear in the opinion, but a very learned jurist later on described it as a forfeiture opinion in the Center for Biological Diversity opinion that the chief judge authored. And I think it just speaks to the general issue of you can call it forfeiture, you can call it preservation. The basic point, and it's not just in administrative law, but it's particularly important for administrative law, is to raise an issue to topple an administrative decision, it is your obligation to bring the issue to the agency. Sure, but it seems that within our Third Circuit law, we also have recognized there are special circumstances. Southwest seems to recognize that as well as Hofstetler and Pennsylvania Department of Public Works versus HHS. And I think in that Public Works case, there was something very similar where the final rule invoked something different than in the proposed. And it seems that we have recognized that as a special circumstance. Your Honor, again, going back to my prior point, I don't think the actual source of statutory authority differs from the proposal to the final. You're absolutely right, it's not a jurisdictional requirement or something like that. The court certainly has discretion. I think the court in the Southwest Pennsylvania… What prejudice does DOE have? I'm sorry, Your Honor. What prejudice is there if we were to exercise that discretion to DOE? I mean, you yourselves, as reflected by the fact that you disavowed the source of authority in the final rule, shows that you have contemplated the various sources of authority for this rule. So why is there any prejudice if we exercise that discretion? Your Honor, two points. First, a legal one and then a factual one. The legal point, I don't think prejudice is the standard. Page 113 of the Southwest Pennsylvania decision, it says there are special circumstances. One particular circumstance is whether not addressing the issue would result in a miscarriage of justice. I can't think of a case less likely to meet that standard here. A miscarriage of justice seemed to be speaking to whether there was retroactive application, which is not what's at issue here. I think the general point is that it's just a very high standard because there is a general rule that if you don't raise an issue in rulemaking proceedings, the issue is forfeited. But to go to my second point, the factual point, I would just again refer to then-Judge Alito's opinion, page 112. Although appellate courts are certainly capable of addressing questions of statutory interpretation not raised during the rulemaking process, it is far more efficient for courts to face such questions only after they have been considered by the agency that Congress has charged with the primary responsibility for enforcing the complex statute in question. But you did consider it. I mean, that's reflected by the fact that – Yes, Your Honor, we did consider the issue. We did cite statutory authority, the same statutory authority, in the proposed rule and the final rule, but I mean – But at what point did you have an opportunity to address the argument that they're making to us? We haven't had the opportunity to address, and had they presented it – Look, I know agency preambles from the court's perspective are often too long, and they could always be longer, and had they brought this issue to us, we could have had a more fulsome explanation of our statutory authority. No, I'm going back to then-Judge Alito's dictum that it's more efficient if you do it at the agency level before you come to us. Yes, Your Honor. But it seems like there wasn't an opportunity to flesh this out at the agency level because of the way the sequence in which the department satisfied itself about its own statutory authority. Judge Porter, I disagree. I think if they had come and said – they filed a comment that said, I think your rule is arbitrary and capricious, and oh, by the way, I don't think you have statutory authority here, the agency would have come back with a more robust explanation. If anything can be said for the statutory scheme, look, I assure you I understand, it's complicated. And this is a rule-making space where we're talking about highly sophisticated parties where the agency is constantly tweaking the regulatory scheme. And so, yes, of course the agency could have given a more robust discussion of the statutory authority, but it gave what was needed here. It cited the same sources of authority in the proposed rule and the final rule. Obviously could have done more if they had come back and said, we disagree. They just didn't do that. So your friend says they've given us definitions and so on, but never a statutory grant of authority. What's your answer to that? Sure. Moving on from forfeiture, if there are no forfeiture questions. So I'll start with the text, the definitional provision, and I'm not going to stop there. It's just a complicated scheme, and I'll just spin it out for you. So the text says electric motors are covered equipment under 6311A. And then 629502 says any, and this is the key point here, new or amended energy conservation standard prescribed by the secretary under this section must meet certain criteria. And that applies to what we're talking about here, covered equipment under the provision in 6316A. And so the reference to amended standards is just a reference to the affirmative grant of rulemaking authority in 6295M. So if you look at, for example, the summary to the preamble, it describes there what this is, which is an amended standard. And so the department has expressed rulemaking authority under 6295M for amended standards, and it referred to amended standards twice in the preamble and eight times in the final rule preamble, including right up at the top on the first page. The department said, in this final rule, DOE is adopting amended energy conservation standards for dedicated purpose pool pump motors. Now, had the agency known that this was going to be an issue to be challenged, the agency could have followed up with a longer explanation of 6295M and how it's an affirmative grant of authority. Instead, it largely replicated what had been done in the past when it was talking to these sophisticated parties who are governed in this regulatory scheme. And so I just want to impress on the Court as well how radical the other side's position is. We're not just talking about upsetting the agency's ability to regulate pool pump motors. It goes far beyond that. Let me ask you a question, counsel. Your position, I take it, is that DOE has authority to issue standards for all covered equipment because they're covered. Now, I'd like to point you to Section 6295L3, which, of course, provides that the Secretary may, in accordance with Subsections O and P, prescribe energy conservation standards for TV sets. TV sets are a covered product, so wouldn't Section 6295L3 be superfluous or if we take your position that they have the ability to issue standards for any covered product? That particular section is a specific grant. Maybe even the expressionis rule applies there. How do you explain it? There are many specific grants all throughout 6295, and it's a recognition that sometimes Congress wants to step in and say, here's a regulatory floor for particular standards. But that can't be read to withdraw all authority that the agency otherwise has. It's not just, to be clear, it's not just because Chief Judge Shigera said it's on the covered list under 6311. It's because the agency has independent rulemaking authority in 6295L for new products that we're not invoking here because it's already on the covered list, and 6295M for amended standards. But Congress included that language. Do we just ignore it and treat it like everything else? So, Your Honor, Congress also included language referring to gas clothes dryers. So, for example, in 1988, Congress came in and banned constant burning pilot lights. And so under Zodiac's view of the world, the Department of Energy has zero ability to impose energy conservation standards for any electric clothes dryer. And the same is true for gas ovens and gas ranges. Now, in response, the only response that Zodiac has is that, no, no, no, no, that's for covered products. That's different. referring to a source of rulemaking authority, purported rulemaking authority, that opposing counsel talked about with Judge Chung in 6295A2. And I just want to be clear. The agency has never relied on 6295A2 as an independent express grant of rulemaking authority. It says right at the top that it's a purpose provision. And so that's not a real way to distinguish covered products from covered equipment. So going back to your point about 6295M, I just want to make sure I'm understanding. Yes, Your Honor. Are you saying that the rule here, the final rule here, is it an amendment to the 6313 rule via 6295M? No, Your Honor, it's an amendment to prior regulations of electric motors. So it's altering the scope of the electric motor category to include these pool pump motors. So it's expanding the definition that excludes. It's not expanding the very capacious definition of electric motor and pump. It's just amending the standard that applies to electric motors and pumps to include these particular types of booster pump motors. And where is that found? Where is that standard found that you're talking about? You mean prior standards? So the department has routinely tweaked standards for electric motors and pumps. One example would be 88FR36066. That's June 1st, 2023. And we referenced that in the final rule on page 67026. And so the department is constantly in this space, constantly tweaking these standards. And so it would be a huge disruption far beyond the scope of just these pool pump motors if the court were to first address this issue, which I don't think it needs to, and second to side with SODIAC. What's the specific language in 6295M that you're looking at? Sure, Your Honor. Let me pull it up. And while I'm looking up, I would just note that even in SODIAC's briefs, they acknowledge that 6295M is an independent source of rulemaking authority. So 6295M, it's talking about – it's providing the source for the department's ability to amend standards and then describes the department's rulemaking authority. So it's talking about how the secretary has to publish a notice of proposed rulemaking, and then the secretary M3 shall publish a final rule amending the standard for the product. And what I suspect that SODIAC's going to say in response is that, well, the preamble here actually talks about this being a new standard, and I just want to clarify for the court, that's because this particular statutory scheme uses – it's not the easiest to understand. It uses new in two ways. It's talking about new standards, amended standards, and then even in 6295M, it's talking about amended standards as new because they're expanding the scope of what the conservation standard – what applies to it. One last question. If we happen to disagree with you, what is a proper remedy? Would it be vacate or remand? Your Honor, I know I said this is a textbook case of forfeiture, and I think this is also a textbook case of remand without vacature. I don't think this is just a question of whether the agency acted in excess of statutory authority. I think instead it would be a question of whether the agency adequately explained its statutory authority. When coupled with the disruption that would occur from Zodiac, a very small market participant, we think that remand without vacature is the more proper course. And if I could just finish up with one quick point. The D.C. Circuit has precedent in this space when you're talking about not just the agency acted outside of its authority, but it didn't properly explain the authority. That would be Bell Atlantic v. FCC 206, F3-1 at pages 7 to 8, but we hope the Court doesn't reach this issue because it's forfeited and incorrect as a matter of law. Thank you, Your Honor. Thank you, counsel. And we'll hear from your adversary. Admiral Budham. Thank you, Your Honor. Just a few points. The Department had the opportunity to explain the legal basis for its rule in its brief. If the Department had better arguments or another source of statutory authority to sustain the rule, they would have said that in their briefs. We're very comfortable with our analysis of the statute that we provided in the briefs. So if the Department is standing up here saying we need a remand to provide a better explanation, I think what they're really asking for is a remand to write a better brief. On the point regarding our position being radical, there's nothing radical about following this statute. If you track the statutory history, 1978 Act, no authority for energy conservation standards. 1992, limited authority for energy conservation standards for industrial equipment. And now you have the Department, years later, invoking definitions, borrowing provisions, and procedural requirements to create substantive authority that Congress did not grant. On the issue of the remedy, vacature is clearly appropriate here. The Department does not have the legal authority. That cannot be cured with reasoning on remand. So we think that clearly this rule is in excess of authority and should be vacated. I don't know. From what you're telling us, you didn't have a chance. They're saying, essentially, if they, and this is the big if, but if it is, if we do agree with you, that now there will be a chance to air this out. But even under case law out of the D.C. Circuit, where there's a surprise switcheroo from the government on a position at the end of the rulemaking process, the cure is vacature. If you don't give a party prior notice and the opportunity to comment, the cure isn't to send it back. The cure is to vacate. And so we think, look, if the Department is standing here asking for another opportunity to provide a better brief, that's not appropriate for vacature. And if this had involved a technical question or something that required an adjudication of facts, then, sure, send it back. That's within their bailiwick. But the Supreme Court has made very clear under Loper-Bright, this is a question of law. This court has an independent obligation to consider it. And the only things you need to look at are the statute, the final rule, and the briefs. And you have all of that right in front of you. This case is ready to be decided. Now, I know we didn't go, I'm sorry. Can you address, your adversary, your friend, tells us that, hey, there's plenty of opportunity to object. They just did it. Did you have that opportunity? Sure. So I will say the Department clearly invoked Section 6313B as a source of legal authority in August 2017 in a public meeting with my client and all the parties that signed the joint petition. Those parties relied on those representations when they filed the joint petition, or at least they didn't question them. I think that's entirely reasonable. Then at the end of the rulemaking process, clearly the Department switched its view. They had said in another related rulemaking proceeding involving test procedures that Section 6313B was in play. And then they came in the final rule and they said, look, we were wrong about that. And I'm not here to beat up on the Department about that. They should be doing that. Do you think they had authority under 6313? No, because I think that that specific grant, those legislative energy conservation standards, provided an exception for dedicated purpose motors, that statute does not authorize them to override it. They haven't argued that. Is your objection that they don't have authority under 6295 or they don't have authority under any provision? We don't think they have authority under any provision. Why have you never said that until now? Until the final rule, the Department had been representing to all parties in the proceeding that Section 631B provided a source of authority. In the final rule, they changed their view on that. I get that. That reopened that issue for purposes of all parties to the proceeding. The Department changed its view. It was reopened or reconsidered. And it's clear that that reopening or reconsideration not only did it preserve the issue, but it made it procedurally proper for us to come to this court and ask for review of that question. But is that right if when they asserted 6313, you could have said, actually, you have zero authority? Again, we think because the Department was considering the issue on its own, that issue was preserved. We think because the Department changed its position at the end of the rulemaking process, we also think it's preserved. So we don't even think it matters at all what anybody else said in the rulemaking process about their legal authority, whether they said they had it or they didn't have it, because the final rule is the part where the Department takes a firm position on its legal authority, and that's what it did. My focus isn't so much on what the Department has said, but on what Zodiac and the stakeholders thought. If you guys thought they never had any authority under any provision, it seems like you should have said that. And I think what we're saying is the Department's original position was that it had this authority under Section 6313B and other provisions. The Department changed its position in the final rule on that source of legal authority, which is a key statutory provision dealing with energy conservation standards. They reopened that issue for purposes of judicial review, and they preserved it. Okay, thank you, Counsel. Thank you, Your Honors. We thank Counsel for their excellent briefing and oral argument today. And if Counsel are amenable, we'd like to greet you at sidebar.